

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. E. Y. Cunningham
County Auditor
Navarro County
Corsicana, Texas

Dear Sir:

Opinion No. 0-2392
Re: Should Navarro County pay burrial
expenses of patients sent to the
State Sanatorium?

Your recent request for an opinion of this department on the
question as is herein stated has been received.

We quote from your letter as follows:

"On several occasions Navarro County has sent patients to
the State Sanatorium and on some few occasions these
patients die while in the hospital and the undertakers re-
quire Navarro County to pay for the burial expense.

"We do not set up in our budget any monies for this
purpose and I am wondering if these patients after being
sent to the Sanatroium and accepted by them are not wards
of the State of Texas instead of Navarro County.

"So far I have not paid any burial expense and I may be
wrong in my opinion. The Doctors tell me that the
Sanatorium or the State of Texas have no money for this
expense. Will you kindly advise whether Navarro County
should pay this burial expense or is it an obligation of
the State of Texas."

Article 2351, Vernon's Annotated Civil Statutes, provides in
part that each commissioners' court shall "provide for the
burial of paupers".

Under the above mentioned statute it is incumbent on commis-
sioners' courts to provide for the burial of paupers, and it
has been said that this is a duty which counties owe to every
pauper regardless of whether or not he has been formally
declared a pauper. But in order to fix the liability of the
county for burial expenses, notice should be given to the
proper authorities and their permission obtained for the burial.
Tex. Jur. Vol. 32, p. 612; McNorton vs. Val Verde County, 25
S. W. 653.

In case of McNorton vs. Val Verde County, supra, it was held that a county is not liable for coffins of paupers dying in a pesthouse which is in charge of the state, under the quarantine laws.

We quote from the above mentioned case as follows:

"The only question presented for our decision is as to the liability of the county for the coffins of those who died in the pesthouse while the state had charge of it under the quarantine laws. Article 1514, subd. 10, Rev. St., makes it incumbent on the county to provide for the burial of paupers; and this is a duty the county owes to every pauper, no matter whether he has been formally declared a pauper by the county or not. Whenever it is ascertained that a man has died, who was a pauper, it becomes the duty of the county to provide for his burial. But in order to fix the liability of the county for the burial expenses, except in extreme cases, notice should be given the county judge, or some county commissioner. It would open the door to frauds on the counties if individual citizens are given the authority to decide who are paupers. The instances will be rare indeed when any great inconvenience will arise from notifying the proper authorities of the death of a pauper, and obtaining proper authority for the burial. There can be no doubt that, if the doctor in charge of the pesthouse has been in the employ of the county, it would have been responsible for the coffins furnished for those who had been confined and died there, if they were paupers. Under article 4090e, Sayles' Ann. St., it is made the duty of the governor or the health officer, in cases of emergency, to declare quarantine against any infectious or contagious disease, and it is provided in article 4090i that all costs and expenses of enforcing and maintaining any such quarantine shall be paid by the state. The object of quarantine is to prevent the entrance or spread of disease, and we are of the opinion that, to fully meet the demands of an efficient quarantine, it would be necessary to expeditiously bury those who die in the quarantine station. If the state is in charge of the quarantine, the expense of the burial of the paupers who die in their charge would rest upon the state. The burial of those who die in a quarantine station in charge of the state would be a part of the necessary cost and expense of enforcing and maintaining the quarantine. Even if the county had held control of the pesthouse, it would seem that the charge of maintaining the quarantine would ultimately be chargeable against the state. Article 4097. We are of the opinion that there is no error in the judgment, and it is affirmed."

Article 3241, Vernon's Annotated Civil Statutes, reads, in part, as follows:

"Patients admitted to said institutions shall be of three classes, to-wit:

"1.  Indigent public patients.

"2.  Non-indigent public patients.

"3.  Private patients.

"Indigent public patients are those who possess no property of any kind nor have any one legally responsible for their support, and who are unable to reimburse the State.  This class shall be supported at the expense of the State.

"* * *."

Our Opinion No. O-2021 holds in effect that the Board of Control has power to enter into a binding contract for the preparation and burial of indigent inmates of certain state eleemosynary institution.  We are enclosing herewith a copy of this opinion for your convenience.

A representative of the Board of Control has informed us that said Board has made arrangements with various undertakers to bury indigent inmates who die in the different eleemosynary institutions of the State, including the State Tuberculosis Sanatorium, where the relatives or friends do not claim the remains of the deceased, and that the State makes no demand on the county of the resident of the deceased to pay such burial expenses.

In certain articles discussed in the case of McMorton v. Val Verde County, supra, it was made the duty of the Governor or the health officer, in cases of emergency, to declare quarantine against infectious or contagious diseases, and it was further provided that all costs and expenses of enforcing and maintaining any such quarantine should be paid by the State.

In view of the above mentioned case of McMorton v. Val Verde County, we believe that Article 3241, supra, imposing upon the State the duty to support and pay the expenses of public indigent patients would also impose upon the State the duty to bury such patients when they die in the State Sanatorium and various other eleemosynary institutions of the State.

Therefore, you are respectfully advised that it is the opinion of this department that Navarro County could not be liable for the burial expenses of public indigent patients who reside in said county and die in the State Sanatorium.  Such expense is an obligation of the State of Texas.

Trusting that the foregoing fully answers your inquiry, we are,

Yours very truly

ATTORNEY GENERAL OF TEXAS

s/ Ardell Williams

By

Ardell Williams
Assistant

AW:jm/cg
Encl.

APPROVED JUNE 26, 1940
s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
By BWB, Chairman